

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
AUG 25 2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Tyenika Effinger )
_____, )
  Plaintiff(s), )
 )
 vs. ) Case No.
 )
Chicago Police Officers Nicu )
Tohatan, William Sierzega and )
City of Chicago, a Municipal Corp. )
 )
  Defendant(s). )

1:25-cv-10116
Judge Franklin U. Valderrama
Magistrate Judge Young B. Kim
RANDOM/Cat. 2

## COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

*This form complaint is designed to help you, as a* pro se *plaintiff, state your case in a clear manner. Please read the directions and the numbered paragraphs carefully. Some paragraphs may not apply to you. You may cross out paragraphs that do not apply to you. All references to "plaintiff" and "defendant" are stated in the singular but will apply to more than one plaintiff or defendant if that is the nature of the case.*

1. This is a claim for violation of plaintiff's civil rights as protected by the Constitution and laws of the United States under 42 U.S.C. §§ 1983, 1985, and 1986.

2. The court has jurisdiction under 28 U.S.C. §§ 1343 and 1367.

3. Plaintiff's full name is __Tyenika Effinger__.

*If there are additional plaintiffs, fill in the above information as to the first-named plaintiff and complete the information for each additional plaintiff on an extra sheet.*

1


4. Defendant, **Vica Tohatan (18700) William Sierzega (14354)**
   (name, badge number if known)

   ☒ an officer or official employed by **Chicago Police Department**;
   (department or agency of government)

   **City of Chicago** _____or

   ☐ an individual not employed by a governmental entity.

   *If there are additional defendants, fill in the above information as to the first-named defendant and complete the information for each additional defendant on an extra sheet.*

5. The municipality, township or county under whose authority defendant officer or official acted is **City Of Chicago, Cook County IL**. As to plaintiff's federal constitutional claims, the municipality, township or county is a defendant only if custom or policy allegations are made at paragraph 7 below.

6. On or about **June 9th 2023**, at approximately **10:45** ☐ a.m. ☒ p.m.
   (month, day, year)
   plaintiff was present in the municipality (or unincorporated area) of **Chicago** _____, in the County of **Cook**,
   State of Illinois, at **600 N. Michigan Ave**,
   (identify location as precisely as possible)

   when defendant violated plaintiff's civil rights as follows *(Place X in each box that applies)*:

   ☒ arrested or seized plaintiff without probable cause to believe that plaintiff had committed, was committing or was about to commit a crime;
   ☒ searched plaintiff or his property without a warrant and without reasonable cause;
   ☒ used excessive force upon plaintiff;
   ☒ failed to intervene to protect plaintiff from violation of plaintiff's civil rights by one or more other defendants;
   ☒ failed to provide plaintiff with needed medical care;
   ☒ conspired together to violate one or more of plaintiff's civil rights;
   ☐ Other: _____
   _____

2

7. Defendant officer or official acted pursuant to a custom or policy of defendant municipality, county or township, which custom or policy is the following: (*Leave blank if no custom or policy is alleged*):

    See Exhibit

8. Plaintiff was charged with one or more crimes, specifically:

    Resisting, No valid Registration, Driving License/Permit Fail To carry

9. (*Place an X in the box that applies. If none applies, you may describe the criminal proceedings under "Other"*) The criminal proceedings

    ☐ are still pending.

    ☒ were terminated in favor of plaintiff in a manner indicating plaintiff was innocent.[1]

    ☐ Plaintiff was found guilty of one or more charges because defendant deprived me of a fair trial as follows _____

    ☐ Other: _____

---

[1]Examples of termination in favor of the plaintiff in a manner indicating plaintiff was innocent may include a judgment of not guilty, reversal of a conviction on direct appeal, expungement of the conviction, a voluntary dismissal (SOL) by the prosecutor, or a *nolle prosequi* order.

3

10. Plaintiff further alleges as follows: (*Describe what happened that you believe supports your claims. To the extent possible, be specific as to your own actions and the actions of each defendant.*)

See Exhibit

11. Defendant acted knowingly, intentionally, willfully and maliciously.

12. As a result of defendant's conduct, plaintiff was injured as follows:

See Exhibit

13. Plaintiff asks that the case be tried by a jury.  ☑ Yes    ☐ No

14. Plaintiff also claims violation of rights that may be protected by the laws of Illinois, such as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy, and/or any other claim that may be supported by the allegations of this complaint.

**WHEREFORE,** plaintiff asks for the following relief:

A. Damages to compensate for all bodily harm, emotional harm, pain and suffering, loss of income, loss of enjoyment of life, property damage and any other injuries inflicted by defendant;

B. ☒ *(Place X in box if you are seeking punitive damages.)* Punitive damages against the individual defendant; and

C. Such injunctive, declaratory, or other relief as may be appropriate, including attorney's fees and reasonable expenses as authorized by 42 U.S.C. § 1988.

Plaintiff's signature: *[signed]*

Plaintiff's name *(print clearly or type)*: Tyenika Effinger

Plaintiff's mailing address: 513 S. Damon Ave

City: Chicago   State: IL   ZIP: 60612

Plaintiff's telephone number: (708) 219-6611

Plaintiff's email address *(if you prefer to be contacted by email)*: tyenikab@gmail.com

15. Plaintiff has previously filed a case in this district. ☐ Yes ☒ No

    *If yes, please list the cases below.*

*Any additional plaintiffs must sign the complaint and provide the same information as the first plaintiff. An additional signature page may be added.*

5

## GENERAL ALLEGATIONS

NOW COMES Plaintiff, TYENIKA EFFINGER, Pro Se, complaining of the Defendants, Chicago Police Officers NICU TOHATAN, WILLIAM SIERZEGA, and CITY OF CHICAGO, and states the following:

1. This action arises under the Constitution of the United States, particularly the Fourth and Fourteenth Amendments to the Constitution of the United States, under the laws of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, §§ 1983 and 1988, and under the laws of the State of Illinois.

2. The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, §§ 1331 and 1343. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367.

3. This Court has jurisdiction over this action pursuant to Title 28 of the United States Code §§ 1331 and 1367, as Plaintiff asserts claims under federal law and the state law claims arise out of the same facts as the federal claims. Venue is proper in the United States District Court for the Northern District of Illinois under Title 28 of the United States Code, § 1391(b)(2), as the events complained of occurred within this district.

## PARTIES

4. At all times relevant herein, Plaintiff TYENIKA EFFINGER (hereinafter "Tyenika") was a resident of Chicago, Cook County, and resided in the Northern District of Illinois.

5. Defendants TOHATAN, and SIERZEGA , ("Defendant Officers") are sued in their individual capacities and were at all times relevant, sworn tactical police officers employed by Defendant CITY OF CHICAGO, and were acting within the scope of their agency, service and/or employment with the CITY OF CHICAGO, and were acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois.

6. Defendant, CITY OF CHICAGO, is a government entity operating within the State of Illinois. The CITY OF CHICAGO is responsible for the actions of its employees while acting within the scope of their employment. At all times relevant to this action, CITY OF CHICAGO was the employer of Defendants TOHATAN, and SIERZEGA .

## FACTS

7. This matter arises from an unlawful traffic stop of a lawfully parked vehicle by Chicago police of an African American motorist woman named Tyenika Effinger.

8. The stop led to an unlawful detention in which Defendant violently ripped Plaintiff's purse from her arm causing injury, emotional distress where Plaintiff was subjected to ridicule, excessive force, handcuffed and arrested while being insulted, mocked and threatened by numerous officers.

9. The unlawful stop was based on Tyenika's alleged expired license plate which should have resulted in nothing more than a parking ticket.

10. Yet Tyenika was subjected to a harrowing encounter with police, who intentionally escalated a minor parking infraction to an unlawful arrest, continuously insulted and berated her, illegally Searched and towed her car then falsified a report to justify their conduct.

### The Incident

1. On or about June 9, 2023, Plaintiff TYENIKA EFFINGER an African American woman was sitting in her parked vehicle waiting for her food order and was in the process of exiting her vehicle to retrieve said order when she was approached by Chicago Police Officers William Sierzega Star No.19352, and Officer Nicu Tohatan Star No.18703 under the pretense of a traffic stop, despite her vehicle not being in operation.

2. Upon information and belief, the initiation of this encounter was racially motivated, as Plaintiff, an African American woman was subjected to disparate treatment and targeted solely because of her race.

3. Officers claimed her registration was expired, though no active traffic violation existed because the vehicle was stationary.

4. Plaintiff was not operating the vehicle at the time, making the officers alleged traffic stop improper and unsupported by probable cause.

5. As Plaintiff was in the process of exiting her lawfully parked vehicle to retrieve her food order, Defendant Officer William Sierzega approached and immediately demanded her driver's license.

6. Plaintiff questioned the basis of this demand, noting that she had not been pulled over and inquiring as to where the officers had come from.

7. Plaintiff then observed the squad car parked alongside her vehicle.

8. Despite Plaintiff's repeated objections that she had not been subject to a traffic stop and was merely parked, Defendant Sierzega persisted in demanding her license and falsely asserted, without legal justification, that the encounter constituted a 'traffic stop.'"

9. Plaintiff at no point posed a threat or engaged in unlawful behavior.

10. Plaintiff asked for and was granted permission by Officer Williams to exit the vehicle as she was doing when Defendants approached her.

11. Despite compliance, Plaintiff was immediately and forcefully placed under arrest despite committing no crime, without probable cause or lawful basis and while attempting to cooperate.

12. At all times, Plaintiff had her identification and driving licenses on her person, stored in her purse.

13. Officers proceeded to search Plaintiff's purse without a warrant or probable cause.

14. During this unlawful search Defendant Officer Tohatan violently ripped Plaintiff's purse from her arm, causing injury and emotional distress.

15. While unlawfully searching Plaintiff's purse without consent, Defendant Officer Sierzega retrieved what were merely crumbs and falsely alleged that the substance was marijuana, in a deliberate attempt to harass Plaintiff and fabricate probable cause where none existed.

16. Defendants than found the plaintiff's government-issued ID and conducted a warrant and records check on Plaintiff's name

17. Despite being in possession of Plaintiff's identification card and knowing Plaintiff's identity, Defendant Officers falsely alleged she failed to provide identification.

18. Plaintiff expressly requested the presence of a supervising officer.

19. Defendants instead summoned numerous additional officers to the scene, all of whom were male. No female officers were called or made available.

20. The deliberate refusal to provide a supervisor and the overwhelming presence of multiple male officers caused Plaintiff to reasonably fear for her safety and placed her in imminent apprehension of harm, leaving her in fear for her life.

21. Defendant Officers falsely claimed Plaintiff resisted arrest, despite video evidence showing otherwise.

22. At no time did Plaintiff possess a firearm, yet Defendant Officers presumed without basis that she was armed.

23. This false presumption escalated the encounter and led to fabricated charges.

24. Defendant Officers unlawfully detained the plaintiff despite lacking probable cause for an arrest

25. Plaintiff was not informed of her constitutional rights during the detention.

26. Defendant Officers ignored Plaintiff's repeated requests for a supervisor to be called to the scene and mocked the Plaintiff when she said "call a supervisor, the defendants said "call a supervisor" in a sarcastic manner

27. The officers acted with arrogance, dismissiveness, and hostility.

28. Defendant Officers conducted an unlawful constitutional seizure under the Fourth Amendment.

29. Defendant knowingly and maliciously subjected Plaintiff to an unconstitutional, warrantless search of her vehicle, without probable cause.

30. Said search was unreasonable, retaliatory, and intended to harass Plaintiff rather than enforce any legitimate law.

31. No contraband or weapons were found in the vehicle.

32. During the unlawful encounter, Defendant Officer Williams initially advised Plaintiff that she would not be placed under arrest, however, shortly thereafter, Defendant Officer Nicu Tohatan conducted a warrant and records check on Plaintiff's name and, without any lawful basis or justification, falsely declared that Plaintiff would, in fact, be taken into custody.

33. Plaintiff's vehicle was unlawfully seized and towed, despite no valid legal justification.

34. The towing of Plaintiff's vehicle caused financial hardship and emotional distress.

35. Officers mocked Plaintiff, made unprofessional remarks, and acted in a degrading manner during the encounter, asking the public "if they would like anything out of the Plaintiff's vehicle".

36. During the encounter, Plaintiff was recorded by pedestrians while she cried in distress, causing her severe humiliation, emotional anguish, and public embarrassment.

37. Defendants ignored Plaintiff's repeated protests regarding the illegality of their actions.

38. Defendants Sierzega and Tohatan conspired to create a false narrative to justify their unlawful conduct.

39. Plaintiff was transported and booked, where her mugshot was taken.

40. While Plaintiff was being transported to the police station in the back of the squad car, she asked Defendants why she was under arrest. Defendants responded, 'I don't know,' thereby admitting that there was no lawful basis or probable cause for her arrest.

41. Plaintiff's booking photograph was repeatedly circulated on social media platforms, including Facebook, causing Plaintiff to suffer ongoing harassment, loss of employment opportunities, public humiliation, and severe emotional distress, as well as damage to Plaintiff's personal and professional reputation.

42. Furthermore, the police report and body-worn camera footage contain contradictory evidence, raising serious questions regarding the accuracy and credibility of the official account of events.

43. Plaintiff's medical condition worsened due to the stress and physical force inflicted by Defendants.

44. Plaintiff was forced to seek hospital treatment for pain and injury sustained during the unlawful arrest.

45. Plaintiff endured significant emotional distress, including anxiety, fear, and humiliation, as a direct result of Defendants actions.

46. Plaintiff was forced to incur financial expenses for medical treatment, towing fees and lost wages.

47. Following the incident, Plaintiff spoke with a supervising officer Lisa A. Eitel regarding Defendants misconduct.

48. The supervisor admitted that the Defendant Officers violated department policy by failing to call a supervisor when Plaintiff requested one and acknowledged that the officers would be "wrote up" (disciplined) for their misconduct.

49. Rather than addressing the seriousness of the constitutional violations, the supervisor dismissively stated to Plaintiff, "if you're going to file a lawsuit, then do it,"

50. This statement demonstrates the City's deliberate indifference to the protection of civil rights and its failure to properly supervise and discipline its officers.

51. Ultimately, it took 8 or 9 tactical police officers and 3-4 squad cars more than 10 minutes to handle an alleged parking infraction.

52. Ultimately, all charges against Plaintiff were dismissed, on or around July 26, 2024, confirming the absence of probable cause and the illegitimacy of Defendants actions.

53. Defendant's actions undermined the credibility and trustworthiness of law enforcement.

54. Plaintiff continues to suffer ongoing emotional distress, reputational harm, and physical pain due to the Defendant's misconduct.

55. Plaintiff was deprived of her liberty without justification

56. Plaintiff suffered financial damages, including towing and impound fees.

57. Plaintiff was forced to go to the hospital as a result of Defendants excessive use of force.

58. Plaintiff endured physical pain, emotional suffering, and trauma from the incident.

59. Plaintiff has since experienced anxiety, fear, and humiliation stemming from Defendants misconduct.

60. Defendant's actions were undertaken maliciously, willfully, and with reckless disregard for Plaintiff's rights.

61. Defendants falsified or misrepresented the circumstances to justify their misconduct.

62. Defendants engaged in conduct that constitutes abuse of authority under color of law.

63. Defendants harassed and used force against Plaintiff because she is an African American woman, in violation of her civil rights.

64. **Defendant Officers pulled on the side of Plaintiff's car so, they could see if Tyenika was black before they decided whether to approach and detain her.**

65. After Defendant Officers arrested Plaintiff, her car was destroyed. Important papers were scattered throughout the front and back seat, mail had been opened, and bags had been dumped out in her truck.

66. At all relevant times, Defendant Officers William Sierzega (Star No. 19352) and Nicu Tohatan (Star No. 18703) were duly appointed, employed, and acting under color of law as sworn police officers of the Chicago Police Department, and were acting within the scope of their employment and official duties."

67. At all relevant times, Defendant City of Chicago, by and through its Police Department, had the right and ability to supervise, control, and discipline its officers, including Defendants Sierzega and Tohatan, and is legally responsible for their acts and omissions committed under color of law and within the scope of their employment.

68. Defendant City of Chicago failed to properly train and supervise its officers, leading to the violations described herein.

69. Defendant City of Chicago has a pattern and practice of allowing officers to engage in unlawful searches, seizures, use of excessive force and racially biased policing.

**CPD's longstanding pattern and practice of racially discriminatory traffic stops**

86. Chicago police have a longstanding practice of disproportionately targeting Black and Hispanic drivers for traffic stops.

87. In a class action lawsuit filed against the City of Chicago last year by the American Civil Liberties Union, plaintiffs claim that traffic stops in Chicago skyrocketed after 2016 while stops throughout the rest of the state remained stable.

88. The Wilkins lawsuit is based in large part on data from the City's Office of Emergency Management and Communications (OEMC), and the Illinois Department of Transportation (IDOT).

89. The Wilkins plaintiffs allege that "[s]ince 2016, CPD officers have targeted Black and Latino drivers with extremely high volumes of traffic stops, frisks, and searches, not for the purpose of enforcing traffic laws but to investigate, harass, and intimidate community members (also called "pretextual" stops) on the basis of race and national origin (the "mass traffic stop program"). - Wilkins v. City of Chicago, 23-cv-4072

90. The Wilkins plaintiffs allege further that CPD's pretextual traffic stops follow a typical pattern:

CPD officers pull over a Black or Latino driver for an alleged minor traffic infraction... Regardless of whether the alleged infraction occurred, the actual purpose of these pretextual traffic stops is not to enforce traffic laws or write tickets (also called "citations"). Rather, CPD officers use the alleged minor traffic violation as an excuse to question and harass the driver about whether they have guns or drugs in the car. Often officers ask to search the car—or conduct a search without consent—and/or frisk the driver, looking for guns or drugs. Sometimes officers handcuff drivers while they search them and their vehicle. Most of the stops are pretextual because their real purpose is investigatory—to find guns, drugs, or other contraband. In over 99% of all stops, CPD officers do not find guns, drugs, or other contraband, in which case they typically let the driver go, without explanation or apology.

91. The above description from the Wilkins complaint is remarkably like what happened to Tyenika on June 9, 2023. She was stopped for a minor parking infraction, her car was searched without his consent, the search revealed no guns, drugs or other contraband, **except Plaintiff was unlawfully arrested without justification.**

92. According to the ACLU's study of IDOT data, CPD's traffic stops have ballooned in the last decade, from around 85,000 in 2015 to more than 535,000 stops in 2023.

93. In 2023, CPD officers stopped Black drivers at a rate 3.75 times that of white drivers and stopped Latino drivers at a rate 2.73 times that of white drivers.

94. CPD's traffic stops yield almost no public safety benefits. Less than one-half of one percent of traffic stops in 2023 resulted in officers finding any contraband (such as weapons or drugs) after they searched a driver's vehicle.

95. In 2023, officers were more likely to find contraband in vehicles driven by white people, even though they were more likely to search cars driven by Black people.

96. The City is well aware of these numbers, which are reported annually by IDOT. Yet the number of traffic stops continues to increase year after year.

97. On information and belief, the traffic stops by Defendant Officers involve

disproportionately Black and Latino motorists, consistent with the overall statistics for the Chicago Police Department.

98. Defendant Officers' actions as described above were committed because of, and in conjunction with, the City's policy and practice of committing pretextual traffic stops targeting Black and Latino drivers.

99. The City is not only deliberately indifferent to the unlawful nature of its discriminatory traffic stops, it is deliberately supporting, condoning, and encouraging this policy in a misplaced effort to deter crime.

## CLAIMS FOR RELIFE / COUNTS

## COUNT I – FEDERAL CLAIM

## UNLAWFUL DETENTION

## DEFENDANT OFFICERS

100. Each paragraph of this Complaint is incorporated as if restated fully herein.

101. Defendants Officers caused Plaintiff to be detained without reasonable suspicion or probable cause to believe he had committed any crime or offense, in violation of the Fourth Amendment to the U.S. Constitution.

102. Alternatively, Defendant Officers detained Plaintiff for an unnecessary and unreasonable amount of time under the circumstances.

103. As a proximate result of Defendants' misconduct, Plaintiff suffered loss of liberty, fear, mental anguish, humiliation and emotional pain and suffering.

## COUNT II – FEDERAL CLAIM

## ILLEGAL SEARCH
## DEFENDANT OFFICERS

104. Each paragraph of this Complaint is incorporated as if restated fully herein.
105. Defendant Officers searched Plaintiff's car without a warrant, without legal process, without his consent, and without probable cause or reasonable suspicion to believe the car contained evidence of a crime, in violation of the Fourth Amendment to the U.S. Constitution.
106. As a proximate result of Defendants' misconduct, Plaintiff suffered loss of liberty, fear, mental anguish, humiliation and emotional pain and suffering.

107. As a proximate result of Defendant Officers' misconduct, Plaintiff suffered loss of liberty, fear, mental anguish, humiliation and emotional pain and suffering.

### COUNT III – FEDERAL CLAIM
### EXCESSIVE FORCE
### DEFENDANT OFFICERS

108. Each paragraph of this Complaint is incorporated as if restated fully herein.
109. The force used against Plaintiff by Defendant Officers, which included her purse being ripped off her arm, being forcibly detained, arrested and being threatened by Defendant Officers, was objectively unreasonable and unnecessary based on the totality of the circumstances, and was undertaken intentionally with malice, willfulness, and reckless indifference to Plaintiff's constitutional rights.
110. As a proximate result of Defendant Officers' misconduct, Plaintiff suffered loss of liberty, physical pain, fear, mental anguish, humiliation and emotional pain and suffering.

### COUNT IV – STATE CLAIM
### FALSE ARREST/WRONGFUL IMPRISONMENT ALL DEFENDANTS

111. Each paragraph of this Complaint is incorporated as if restated fully herein.
112. Defendant Officers, and CITY OF CHICAGO, by and through its agents, Defendant Officers restrained and/or arrested Plaintiff without having reasonable grounds to believe he had committed any crime or offense.
113. Alternatively, Defendant Officers, and CITY OF CHICAGO, by and through its agents, Defendant Officers, restrained and/or arrested Plaintiff for an unnecessary and unreasonable amount of time under the circumstances.
114. As a proximate result of Defendants' misconduct, Plaintiff suffered loss of liberty, fear, mental anguish, humiliation and emotional pain and suffering.

### COUNT V – STATE CLAIM BATTERY
### ALL DEFENDANTS

115. Each paragraph of this Complaint is incorporated as if restated fully herein.
116. Defendant Officers, and CITY OF CHICAGO, by and through its agents, Defendant Officers, made contact with Plaintiff of an insulting or provoking nature without her consent or legal justification, thereby committing a battery.
117. As a proximate result of Defendants' misconduct, Plaintiff suffered loss of liberty, fear, mental anguish, humiliation and physical and emotional pain and suffering.

### COUNT VI – STATE CLAIM
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ALL DEFENDANTS

118. Each paragraph of this Complaint is incorporated as if restated fully herein.

119. Defendants' conduct, as described herein, was extreme and outrageous, defendants intended to cause or recklessly or consciously disregarded the probability of causing emotional distress, and Plaintiff suffered severe emotional distress as a proximate result of Defendants' actions.

120. As a proximate result of Defendants' misconduct, Plaintiff suffered loss of liberty, fear, mental anguish, humiliation and physical and emotional pain and suffering.

## COUNT VII – FEDERAL CLAIM POLICY AND PRACTICE
## CITY OF CHICAGO

121. Each paragraph of this Complaint is incorporated as if restated fully herein.
122. As a matter of both policy and practice, the actions and inactions of defendant City of Chicago and the Chicago Police Department have facilitated and permitted the very type of misconduct at issue here by supporting, promoting, and encouraging the policy of mass traffic stops that disproportionately target Black and Latino drivers, as well as illegal searches.
123. Defendant City of Chicago and the Chicago Police Department failed to develop, maintain, and enforce proper procedures and conduct proper training of their employees, including but not limited to the Defendant Officers, and failed to control or discipline those employees on a continuing basis, said failures having proximately caused damages to Plaintiff.
124. Defendant City of Chicago and the Chicago Police Department had the duty to properly instruct, supervise, control, discipline or otherwise prevent or aid in preventing the commission of said wrongs, and could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and callous disregard towards Plaintiff, refused and/or failed to do so.
125. As a proximate result of Defendant's misconduct, Plaintiff suffered loss of liberty, fear, mental anguish, humiliation and physical and emotional pain and suffering.

## COUNT VIII – STATE CLAIM
## INDEMNIFICATION
## DEFENDANT CITY OF CHICAGO

126. Each paragraph of this Complaint is incorporated as if restated fully herein.
127. At all relevant times, CITY OF CHICAGO was the employer of Defendant Officers.
128. Defendant Officers committed the acts alleged above under color of law and in the scope of their employment as employees of the CITY OF CHICAGO.
129. Illinois law provides that government entities are directed to pay any tort judgment for any damages for which employees are liable within the scope of their employment activities.

130. Should Defendant Officers be found liable on one or more of the claims set forth above, Plaintiff TYENIKA EFFINGER demands, pursuant to Illinois law, that their employer, Defendant CITY OF CHICAGO, be found liable for any judgment plaintiff obtains against Defendant Officers, as well as attorney's fees and costs awarded, and for any additional relief this Court deems just and proper.

### COUNT VIIII – Property Damage / Conversion Under State Law

### PRAYER FOR RELIEF (ALL COUNTS)

70. As a direct and proximate result of Defendants unlawful misconduct, Plaintiff, TYENIKA EFFINGER then and there have suffered severe and permanent damages including but not limited to physical injuries, emotional distress, reputational harm, property damage, financial losses, anxiety, fear, humiliation and violations of her civil rights.

WHEREFORE, the Plaintiff TYENIKA EFFINGER respectfully requests judgment in favor of Plaintiff and against Defendants jointly and severally in the amount of $200,000, punitive damages to deter future misconduct, the cost of this lawsuit and grant such other relief as this Court deems just and proper.

Respectfully,
Tyenika Effinger, Pro se
513 South Damen Ave, Apt 1014
Chicago, IL 60612
Phone: (708) 219-6611
Tyenikab@gmail.com

*Tyenika*
8.25.25